## ANNA MILLER ET AL. v. TOLEDO (CITY).

1. MUNICIPALITY NOT LIABLE FOR DESTRUCTION OF LOCAL DRAINAGE CONNECTIONS.

A municipality, acting in good faith in the construction of a sewer, incurs no liability for injuries sustained by reason of the destruction of local drainage connections, where the latter have been effected and maintained without the consent of such municipality.

2. Treating Local as Sub-Main Sewer, Exempts Property Owners from Further Assessments.

> When the council elects to treat a local sewer as a sub-main sewer and the expense of the same is estimated and assessed, under sec. 2385, Rev. Stat., against such property as was, in their opinion, benefited thereby, property owners so assessed may avail themselves of whatever rights they may have in such sewer, and are exempt from further assessments, for another sewer, by sec. 2380, Rev. Stat.

Error to the Court of Common Pleas of Lucas county.

Scribner, J. (orally.)

About 1876, proceedings were instituted before the common council of the city of Toledo for the establishment and construction of a sewer to be located between Oliver street on the north, and Broadway on the south, the sewer to extend easterly and westerly along an alley situated between these streets. The ordinance providing for the construction of the sewer, declared that the cost and expense should be assessed according to benefits, and with no limitation in this requirement of the ordinance as to the lands that should be or might be assessed according to benefits. It is not limited to the abutting property. This sewer passed through Morris' addition, and is known as sewer No. 195. Certain lots in that addition, as originally platted, had a frontage of fifty feet on Oliver street and also on Broadway, extending back that width to the alley in which sewer No. 195 was constructed. These lots were 150 feet in depth. They were assessed their proper proportion of the costs and expense of constructing this sewer according to benefits, and this assessment was confirmed by the council.

Prior to the proceedings of the council, providing for the establishment and construction of this sewer, lots 607, 609 and 611, lying between the alley and Oliver street had been subdivided by the owners into six parcels of twenty-five feet in width, each having a frontage on Logan street on the east They were numbered 1 to 6, consecutively. An alley ten feet in width was established and opened across lot 607 in the rear of this subdivision, extending from the alley to Oliver street.

At the time of the establishment and construction of this sewer, the plaintiffs were the owners of, and occupied subdivision 2 on the north and one-half of subdivision 3 of this subdivision. This parcel was assessed $23 as its fair proportion of the cost and expense of constructing sewer No. 195, and this assessment was duly paid by the owners.

Shortly after the construction of the sewer, and of the payment of the assessment, the plaintiffs constructed at their own expense a catch-basin upon their premises connecting with the sewer by laying a 9-inch drain tile for that purpose. Necessary house connections were also made and there was expended in this work some $60 to $70. The plaintiffs made use of the drainage so provided until in 1892, after which time there was established and constructed upon proceedings of the common council, sewer 436. The expense of constructing this sewer was to be paid by assessment according to benefits. The total amount assessed upon plaintiffs' property, upon the basis of benefits furnished by this sewer, was $83.55.

This proceeding was brought to enjoin the collection of this assessment on the ground that, by the establishment of sewer 195, the plaintiffs had been provided with sufficient drainage. This claim is based upon sec. 2380, Rev. Stat.

> " The assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands; nor shall any lots or lands be assessed that do not need local drainage, or which are then provided therewith; and the excess of the cost, over the assessment herein authorized, shall be paid out of the sewer fund of the corporation."

It is claimed on the part of the city that sewer 195 was a local sewer; that plaintiffs were not entitled to drain into it, as the lots did not abut upon the street through which it passed; also that they had never received from the city authorities the proper permit authorizing them to drain into the sewer, and that such

Miller et al. v. City of Toledo.

use, if known to the city, was merely permissive and did not bind the city to permit its continuance.

It does not appear that any formal permit was ever issued to the plaintiffs. The construction of the catch basin and the laying of the drain tile connecting it with sewer 195 had occupied about a week, during which the entire alley was closed on account of the work, and they had been in continual use without objection, and until the construction of sewer 436, in 1892, a period of about fourteen years.

In constructing sewer 436 in the alley upon the subdivisions as enumerated, the drain tile connection of the plaintiffs were destroyed and thereby it was rendered impossible for the plaintiffs to re-establish an outlet from their catch basins to sewer 195.

We think, however, under the rulings of the Supreme Court, that the city having acted in good faith in establishing and constructing sewer 436, incurred no liability for injuries sustained by the plaintiff by reason of the establishing and constructing the sewer, and all claim for such liability is withdrawn from the petition in this case. But the important question is as to whether the property of the plaintiffs is liable to be assessed for the cost of sewer 436. This depends upon the further question as to whether at the time of establishing and constructing sewer 195, the plaintiffs were entitled to make use of it for the purpose of draining their property, and the latter was liable to assessment for the cost and expense of its construction. Upon this question, the counsel for the city cites sec. 2397, Rev. Stat., and 2380, which I have already read, and 2384. Section 2397 reads as follows:

"The council may provide for the construction of branch or local sewers within any street, or other public ground, within the corporation, wherein a main sewer is not established or built, which local sewers shall connect with a main sewer convenient thereto, as the council may direct; and if the corporation is laid off into districts, the connection shall be with a main sewer in the district wherein the local sewers are constructed; but no sewer shall be considered local, except such as are intended for and used exclusively for the drainage and accommodation of lots abutting thereon."

Section 2234, which is cited, simply provides for the limitation of the assessment:

"In no case shall the assessment exceed the sum of two dollars per foot front on the property assessed; and when the amount of the quotient exceeds that sum, the excess shall be paid out of the sewer fund of the corporation."

These are the only sections cited on the part of the city as bearing upon this question. It is claimed that this sewer is purely a local sewer, and that therefore it can be used only for the property abutting upon it. The property of the plaintiffs here, it is said, did not abut upon the alley where the sewer was located, and therefore it was not subject to be assessed for it, and that the plaintiffs were not entitled to connect with and use it.

The question arises as to whether or not, under the statute any part of the expense of constructing a sewer may be specially assessed upon property not abutting upon the street and alley in which the sewer is constructed. Sections 2397 and 2385 bear upon this point. Section 2397 is one regarding local sewers, to which I have already referred. Section 2385 is as follows:

"If the assessment be according to benefits, the council shall appoint three judicious freeholders of the corporation, or its vicinity, who shall assess the estimated expense of the main sewerage upon the lots or lands along which the same passes, in the manner above provided, in proportion to benefits; and the estimated expense of the local sewerage where such local sewerage is provided for by this subdivision, shall be assessed on such lots and lands as will, in their opinion, be benefited thereby, whether fronting on the public ground in which the local sewer is to be constructed, or not, in proportion, as nearly as may be, to the benefits which may result to each lot or parcel of land."

The last section seems to indicate that where the assessment is by benefits, the amount of the benefit, although the property be not abutting, may be as-

sessed. This could scarcely be permitted when property owners were not allowed to make use of the sewer. It does not appear here that sewer 195 was intended to be used exclusively as a local sewer. It is of considerable length, extending along the alley before described, and according to the map of the sewer district in which it is located, it is tapped by other sewers. It does not appear that at the time of the establishment and construction of this sewer, the city contemplated the construction of a sewer in the alley where No. 436 is now located. No step was taken in that direction for about fifteen years; no step indicating that a sewer would ever be constructed there, and until the city should take steps for the location of a new sewer, the plaintiffs were justified in availing themselves of whatever rights they had in the existing sewer. The cost of establishing sewer 195 was assessed upon the lots lying along the alley in which it was constructed upon either side. Unquestionably this was properly done as to all these lots, which are numbered 607, 609 and 611, which had been subdivided as before stated, the proper amount of the assessment being apportioned to the several subdivisions. The council thus elected to treat the sewer not as a local sewer strictly under sec. 2397, but in the nature of a sub-main sewer, under sec. 2395. If, therefore, the proceedings of the common council, establishing sewer 195 do not come within sec. 2385, we think it is not governed by sec. 2397, establishing local sewers, but comes within the operation of sec. 2385, providing for sub-main sewers.

It results fom this view of the law that the plaintiffs are entitled to an injunction as prayed for in the petition, for that at the time sewer No. 436 was provided for, the plaintiffs were furnished with sufficient drainage.

*E. O. King*, for plaintiffs.

*C. F. Watts*, City Solicitor, for defendant.